Stanley F. **KIZIOR**, Respondent,

v.

**TRANS WORLD AIRLINES**, Appellant.

**No. WD 56677.**

Missouri Court of Appeals, Western District.

Submitted July 21, 1999.

Decided Nov. 16, 1999.

Thomas V. Clinkenbeard, Kansas City, for Appellant.

Jerrold Kenter, Kansas City, for Respondent Kizior.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Amy L. Glaser, Asst. Atty. Gen., Kansas City, for Respondent Second Injury Fund.

Before RIEDERER, P.J., SMART and ELLIS, JJ.

PER CURIAM.

Trans World Airlines ("TWA") appeals a decision of the Labor and Industrial Relations Commission ("Commission") awarding Stanley Kizior workers' compensation benefits for permanent and total disability.

TWA contends that the Commission erred in determining TWA's liability under § 287.220, RSMo 1994,[1] and the governing case law, because it determined, in effect, that Kizior is one hundred and sixteen percent disabled. TWA contends that this contradicts the maximum compensation payments allowable under § 287.190. TWA further argues that the Commission erred in awarding compensation based upon the testimony of Kizior's expert witness, Dr. P. Brent Koprivica, because that testimony does not meet the required standard of substantial and competent proof. Affirmed.

### Factual Background

At the time of the hearing, Kizior was fifty years old. He began working for TWA on August 5, 1969. On November 9, 1992, Kizior injured his back while lifting a 250–pound 747 shoring jack. He was medically retired from TWA on January 1, 1995.

The injury to Kizior's back was not the first. Kizior served in Vietnam with the United States Air Force as a crew chief, where he sustained three back injuries. His first injury occurred during a rocket shelling. He did not seek medical treatment. He was injured a second time while lifting sandbags. He saw a doctor who prescribed medication. Kizior was then struck in the back with shrapnel. Again, he did not seek medical treatment.

After his discharge from the Air Force, Kizior began work at TWA. In 1978, Kizior underwent his first right L5–S1 laminectomy and discectomy. That same year, Kizior experienced problems with his neck, which was diagnosed as C7 radiculopathy. The following year, Kizior was diagnosed with left carpal tunnel syndrome and underwent a surgical release. In 1987, Kizior injured his left hand while working on the forward wing of a Boeing 767 aircraft. The injury to his hand required surgery and resulted in Kizior filing his first workers' compensation claim, which was settled for twenty-two percent at the left wrist. Kizior is left-handed and continues to experience problems with numbness and his grip. In 1988, Kizior injured his back at work. He underwent a second laminectomy at L5–S1. He has also undergone three hernia operations with five fixes, prior to 1992.

After his injury of November 9, 1992, which he sustained while lifting a heavy shoring jack, Kizior was diagnosed with right S1 radiculopathy secondary to a recurrent L5–S1 herniated disc. On January 28, 1993, Kizior underwent surgery. His surgeon performed a hemilaminectomy and discectomy. Although the surgery relieved some of the pain that he experienced, Kizior continued to have difficulty. Although he returned to work after the surgery, his co-workers would not let him do any strenuous work. Kizior underwent additional surgery in April 1994. This time the doctor performed a laminectomy at L4–5, with the excision of extruded nucleus pulposis. When his doctor released him in November 1994, he did not return to work. On January 1, 1995, he was medically retired from TWA.

Kizior is physically limited. He cannot reach down to wash his feet and legs; he can lift only about fifteen pounds, walk two hundred feet, and drive for forty-five minutes. He is unable to mow his yard. He is unable to repair equipment around the house, and cannot engage in recreational activities such as fishing or hunting. Kizior takes naps throughout the day and sleeps about four hours per night. He has been diagnosed as narcoleptic and is taking medicine for that as well as for a heart condition. Kizior also takes a morphine substitute, Tylox, for pain and is still under medical treatment for pain management once a month at a hospital. He has been

---

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

found to be totally disabled for Social Security purposes.

In August 1995, Kizior attempted to commit suicide by burning down his house while he was inside it. During a confrontation with the SWAT team that responded, Kizior fired a gun into the air. He was arrested and eventually pled guilty to using a firearm in an illegal manner. As part of his probation, he spent two weeks at a psychiatric hospital and is still under the care of a psychiatrist.

Kizior filed a timely claim for workers' compensation for the November 1992 injury. A hearing on the matter was held March 3, 1998. At that hearing, Kizior presented the deposition of P. Brent Koprivica, M.D. Dr. Koprivica, who has a master's degree in public health, practices occupational medicine. Dr. Koprivica performed a medical evaluation of Kizior on December 14, 1995. Dr. Koprivica opined that as a result of the November 9, 1992 injury alone, Kizior suffered a residual seventy percent permanent partial disability to the body as a whole. This means that if Kizior's prior conditions were totally isolated (or, in other words, if Kizior had started out whole on November 9, 1992) the injury, standing alone, would represent a seventy percent disability. Combining Kizior's prior injuries to the injury he suffered on November 9, 1992, Dr. Koprivica believed that Kizior was totally and permanently disabled. In forming his opinion, Dr. Koprivica looked at Kizior's prior disabilities, finding a twenty-five percent disability to the body as a whole as a result of two prior laminectomies, an eleven percent permanent partial disability to the body as a whole referable to a laminectomy at L5–S1, a ten percent disability to the body as a whole for a prior cervical injury with C7 ridiculopathy, and a twenty-five percent disability of the hand at the level of the wrist.

During cross-examination, Dr. Koprivica was asked about these numbers:

Q. All right. And again, if you assume all these underlying figures, then, based upon the numbers that you have expressed as to pre-existing disabilities, you're saying that this man has a combined disability of 183.78 weeks?

A. Prior to November 9, 1992? Yes.

Q. And would you also agree that you're just a fraction off 46 percent of the body as a whole when you talk about 183.78 weeks?

A. Yes.

Q. So, if you then proceed to tack on 70 percent referable to the 1992 injury, standing alone, would you agree you're essentially representing to this Court, then, this man is 116 percent disabled?

A. No, he's – you can only be 100 percent disabled. But what I'm representing is that if I were to consider the sequela from his injury, in isolation, where he didn't have any of the prior disability, excluding those, that would have represented a 70 percent disability to the body as a whole. That's what the 70 percent realized. But when you take everything in conjunction, even though, if you add them up in isolation, they would be greater that 100 percent, you can only be 100 percent disabled.

Q. Well, if we hypothetically adhere to the philosophy that 100 percent is the maximum that anyone can be disabled, would you agree that the most you could attribute to any event occurring after the three prior disabilities that you've outlined, would be approximately 54 percent to the body as a whole?

A. If I take that as a hypothetical – accept that hypothetically, yes. If you can only get to 100 percent, then that would be the difference between what existed before.

Mary Titterington, a vocational rehabilitation specialist, tested Kizior's vocational capabilities. Titterington testified that she believed that Kizior was not employable.

She based her opinion on a number of factors including his chronic pain, lack of stamina, lack of emotional stability, and the combination of medication that he takes, particularly morphine.

TWA introduced the written opinion of Dr. Charles Clough into the record without supporting testimony. Dr. Clough opined that Kizior was permanently and partially disabled. He rated Kizior as having a twelve percent impairment of the whole man on the basis of multiple back operations, an additional ten percent impairment of the lower extremity and fifteen percent impairment of motor strength. Dr. Clough explained that this would amount to a thirty percent impairment of the lower extremity, equating to a twelve percent impairment of the whole man. Thus, in regard to total disability, Dr. Clough opined that Kizior had a twenty-three percent impairment.

The Administrative Law Judge ("ALJ") found that Kizior was permanently and partially disabled and that the November 9, 1992 injury resulted in an additional disability of thirty-five percent to his body as a whole. The ALJ did not find that Kizior was permanently and totally disabled because he found Kizior's proof "incomplete and predicated upon expert testimony outside the field of expertise."

Kizior applied for review with the Commission, contending that there was sufficient competent evidence in the record to find that he was permanently and totally disabled. The Commission agreed, and modified the ALJ's award, determining that TWA was liable for Kizior's last injury, which produced a seventy percent disability to the body as a whole, and that the combined effects of all of Kizior's injuries resulted in permanent and total disability to Kizior.

TWA appeals.

### Standard of Review

Review is governed by § 287.495.1, which provides that an appellate court "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award" only where it finds that the Commission acted without or in excess of its powers; that the award was obtained by fraud; that the Commission's findings do not support the award; or that the record does not contain sufficient competent evidence to justify the making of the award. *See Akers v. Warson Garden Apartments*, 961 S.W.2d 50, 52–53 (Mo. banc 1998).

Review is essentially a two-step process as described in *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 570 (Mo.App. 1995). First, we must determine whether the whole record, viewed in the light most favorable to the decision, contains sufficient competent and substantial evidence to support the Commission's decision. *Id.* If we find that it does, then we make a determination as to whether the decision is against the overwhelming weight of the evidence. *Id.* In this second step, all of the evidence in the record is considered, including that unfavorable to the decision. *Id.* We defer to the Commission on issues encompassing the credibility of witnesses and the weight given to testimony. *Johnson v. Denton Const. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995). However, we independently review questions of law. *Id.* at 287.

### Calculation of Percentage of Disability

In Point I, TWA contends that the Commission miscalculated TWA's liability for Kizior's injury, claiming that the Commission did not follow the Missouri statutes that provide the guidelines for such calculation. TWA is arguing that the Commission's determination, in effect, finds that Kizior was one hundred and sixteen percent disabled. TWA reasons that any disability over one hundred percent is a logical impossibility. We believe that TWA's argument is flawed. Dr. Koprivica's ratings do not amount to a finding that Kizior is more than one hundred percent disabled. Furthermore, we find that

the Commission correctly followed the prescribed method for determining TWA's liability.

TWA complains that the Commission should have utilized § 287.190 in its calculations. However, that section is concerned with *permanent partial disability* and is not really applicable here. We begin by examining the method established for calculating disability in "[a]ll cases of permanent disability where there has been previous disability[.]" § 287.220.1, RSMo 1994. The Second Injury Fund is created in § 287.220. Where a claimant is found to be totally and permanently disabled (as is the case here), § 287.220.1 fixes and limits an employer's liability to that part of the disability "result[ing] from the last injury had there been no preexisting disability."

■ Section 287.220.1 contains four distinct steps in calculating the compensation due an employee, and from what source, in cases involving permanent disability: (1) The employer's liability is considered in isolation – "the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability;" (2) Next, the degree or percentage of the employee's disability attributable to all injuries existing at the time of the accident is considered; (3) The degree or percentage of disability existing prior to the last injury, combined with the disability resulting from the last injury, considered alone, is deducted from the combined disability; and (4) The balance becomes the responsibility of the Second Injury Fund. The Commission followed these steps.

In *Stewart v. Johnson*, 398 S.W.2d 850, 852 (Mo.1966), the Missouri Supreme Court considered the issue of whether the Commission had correctly calculated the respective liability of an employer and the Second Injury Fund in a case where the Commission found that an employee had sustained a compensable injury which, considered alone and of itself, was equal to fifty percent of the body as a whole. The Commission further found that the employee had a prior disability equal to fifty percent of the body and the prior disability combined with the injury under consideration resulted in total and permanent disability. *Id.* The court explained that § 287.220 was a legislative attempt to encourage industry to employ the partially handicapped by "(1) partially ... reliev[ing] the employer of his liability to an employee for disability not specifically attributable to injury suffered while in his employment, and, (2) protect[ing] the employee by providing a fund from which he would be compensated for that portion, if any, of his disability above that attributable to his last injury." *Id.* at 853.

The court emphasized:

In determining the liability of the employer in this case, we should first consider only the disability resulting from the last injury; otherwise the words 'considered alone and of itself' are meaningless. Until that disability is determined, it is not known whether the second injury fund has any liability, for the statute contemplates that the employer's liability for compensation may be at least equal to that provided for permanent total disability in § 287.200; otherwise, it would be meaningless to provide that the fund pay 'the remainder' if compensation due from employer for the last injury 'is less than' that to be paid for permanent total disability. Here the disability resulting from the last injury alone was a permanent partial disability.

*Id.* at 854.

The court first calculated the amount to which the employee was entitled for permanent partial disability caused by the accident and held the employer liable for that amount. *Id.* Next, the court calculated the compensation to the employee for a permanent total disability. The amount that the employee was owed by the employer was then subtracted from that compensation, and the Second Injury Fund was held liable for the difference. *Id.*

■ Section 287.220.1 does not require that the Commission determine the percentage of Kizior's preexisting disabilities. *See Vaught v. Vaughts, Inc./Southern Missouri Const.*, 938 S.W.2d 931, 942 (Mo.App. 1997). In the present case, Dr. Koprivica testified that the "degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability" amounted to seventy percent. According to the provisions of § 287.220.1, this is the amount for which TWA is responsible. Kizior's preexisting disabilities are irrelevant at this point. It is only *after* the initial determination is made that Kizior's preexisting disabilities are factored into the equation. Because these injuries combined with the 1992 injury render Kizior permanently and totally disabled, liability for the balance falls to the Second Injury Fund.

TWA assumes that Kizior's prior disabilities coupled with the injury from the 1992 accident would add up to more than one hundred percent. However, the seventy percent disability rating given by Dr. Koprivica may encompass a portion of Kizior's previous injuries. The same would be true in a circumstance in which an automobile owner, having a dent in a door of his automobile, is involved in a collision causing a total loss to his vehicle. The dent in the door is not added to the overall damage, but instead is merely subsumed within the total damage.

■ The Second Injury Fund's liability is fixed by the statute for the "balance, if any" resulting from the employer's liability compared with permanent total liability. When there is no difference, the employer is responsible for the entire amount. The method of calculation of respective liability for permanent total disability takes into account the possibility of overlap between preexisting injuries and the new injury. As noted in *Stewart*, "the statute contemplates that the employer's liability for compensation may be at least equal to that provided for permanent total disability in § 287.200; otherwise, it would

be meaningless to provide that the fund pay 'the remainder' if compensation due from employer for the last injury 'is less than' that to be paid for permanent total disability." *Stewart*, 398 S.W.2d at 854.

As noted in *Vaught*, an employer may be responsible for an employee's permanent and total disability where a partially disabled employee sustains a new injury:

> Consequently, teaches *Stewart*, where a partially disabled employee is injured anew and rendered permanently and totally disabled, the first step in ascertaining whether there is liability on the Second Injury Fund is to determine the amount of disability caused by the new accident alone. The employer at the time of the new accident is liable for that disability (which may, by itself, be permanent and total). If the compensation to which the employee is entitled for the new injury is less than the compensation for permanent and total disability, then in addition to the compensation from the employer for the new injury, the employee (after receiving the compensation owed by the employer) is entitled to receive from the Second Injury Fund the remainder of the compensation due for permanent and total disability.

*Vaught*, 938 S.W.2d at 939. (Citations omitted).

The method used by the Commission in calculating TWA's liability for Kizior's injury has not been shown to be improper under § 287.220. Thus, the Commission did not err in its determination that TWA was liable for seventy percent of Kizior's disability. Point I is denied.

### Dr. Koprivica's Opinion

■ In Point II, TWA contends that the Commission erred in awarding compensation based upon Dr. Koprivica's opinion. It claims that Dr. Koprivica's opinion was based upon assumptions that were not borne out by documentary evidence or Kizior's subjective history and was, in fact, contradicted by his sworn testimony.

Once again TWA complains that Dr. Koprivica estimated a one hundred sixteen percent total disability. As explained in our analysis of Point I, this is a misleading characterization of Dr. Koprivica's testimony.

TWA challenges the assumptions that Dr. Koprivica made about Kizior's medical history. Specifically, TWA questions Dr. Koprivica's assumptions concerning Kizior's previous surgeries. TWA reasons that because such assumptions are suspect, Kizior has failed in his responsibility to apportion between his preexistent and current disabilities, citing *Goleman v. MCI Transporters*, 844 S.W.2d 463, 466 (Mo. App.1992) in support of its claim. *Goleman* concerns the apportionment of liability for permanent partial disability. It is not relevant here. Instead, under § 287.220.1, TWA's responsibility is determined by establishing the amount of disability caused by the new accident alone. Dr. Koprivica testified that this amounted to a seventy percent disability. Under the *Davis* analysis we examine the record in the light most favorable to the award to see if there is competent and substantial evidence supporting it. *See Davis*, 903 S.W.2d at 570. We next examine the award looking at all of the evidence in the record, even that which may not be favorable. *Id.*

There was evidence to support the conclusion that Kizior was permanently and totally disabled. The only contrary evidence was Dr. Clough's rating, which the Commission was not required to accept. Point II is denied.

Affirmed.