**Joanne LOCKMAN, Respondent,**

v.

**CITIZEN'S MEMORIAL HOSPITAL and Missouri Hospitals Self Insurance Fund, Appellants.**

No. 25874.

Missouri Court of Appeals, Southern District, Division Two.

June 25, 2004.

Motion for Rehearing and Transfer Denied July 16, 2004.

Application for Transfer Denied Aug. 24, 2004.

Kevin M. Johnson, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Springfield, for appellants.

John O. Newman, Newman & Aldridge, Springfield, for respondent.

KENNETH W. SHRUM, Judge.

In this workers' compensation case, Joanne Lockman ("Employee") was adjudged permanently and totally disabled and awarded benefits commensurate therewith. In this appeal, her employer ("Citizens") and its insurer allege that the Labor and Industrial Relations Commission ("Commission") erred because, even though Employee may be permanently and totally disabled, Citizens was not liable (as a matter of law) for the entire claim as the Commission found. We disagree. The Commission's award is affirmed.

## STANDARD OF REVIEW

When reviewing such an award, appellate courts "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23[1] (Mo. banc 2003). "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Id.* at 223[2].

## FACTS

Employee was working as a housekeeper for Citizens on June 21, 1996, when she fell, landing on her buttocks. It was this accident and resultant injuries to her back (particularly the L4–5 region of her back) that Commission ultimately found had rendered Employee totally disabled.

Before this accident, Employee had some health problems which resulted in some permanent, partial disability ratings. These pre-accident disabilities are why Citizens claims the Commission erred when it ruled Citizens was liable for Employee's total, permanent disability claim. For instance, sometime before 1981, Employee was diagnosed with ovarian and uterine cancer. Side effects from her radiation therapy ultimately led to removal of part of her small intestine. Near that same time (early 1980's), one of Employee's kidneys was removed after "blood vessels leading to [it] ... wadded up and cut theirself off." When Employee was evaluated by Dr. Norbert Belz after her 1996 accident, he found she had 5% permanent, partial disability to her body as a whole stemming from after-effects of radiation therapy used to combat the cancer.

Employee also had occasional back pain before 1996, for which she sometimes saw her physician. Then, in late August or early September 1995, she injured her back at home. Ultimately she sought

treatment from Dr. Crabtree, a neurosurgeon. Dr. Crabtree noted that Employee had a "problem with back pain for several years," but that her current pain (in September 1995) "overshadowed" her prior problem. Dr. Crabtree concluded that a "disc herniation at the L4–5 level to the left[ ]" was causing the increased pain. In September 1995, Dr. Crabtree surgically treated that condition.

By the time Employee went home from the 1995 surgery, her post-accident leg pain and numbness were gone and her back felt better. In her recuperation period, Employee and her husband took several vacations, including one to numerous western states. Employee testified she had no back pain during this trip, engaged in a wide range of physical activities, and did so without restriction or use of pain medication. She also resumed other activities such as cooking, house cleaning, grocery shopping, playing bingo, driving, gardening, lawn mowing, playing golf, and generally doing whatever she wanted to do.

By the time Employee returned to work at Citizens in 1996, she was able to perform her "full duties" as a housekeeper "without any problems." This included cleaning hospital rooms, mopping floors, washing linens, and cleaning spills. Even so, Dr. Belz found Employee had a 12.5% permanent, partial disability to the body as a whole caused by the 1995 back injury.

After Employee's on-the-job accident of June 21, 1996, she was awakened that night by pain in her hip and low back. Soon, she began having left radicular leg pain. By August 1996, Employee was referred to Dr. Park (another neurosurgeon) for evaluation and treatment. Dr. Park's initial diagnosis was that Employee had a herniated disc at L–5 with extradural scar tissue present. This diagnosis was confirmed when he surgically treated Employ-

ee via "lumbar semihemilaminectomy, removal of disc, L4–L5, left."

Employee's discomfort did not significantly improve after the surgical treatment. In its brief, Citizens candidly states that Employee's "current condition is not contested." Since the 1996 accident and surgery, Employee has significant pain in her back, buttocks, left foot, and ankle. She cannot sit or stand for much more than 15 minutes at a time. She can only walk for short distances because her foot will swell, and she occasionally falls. In attempts to alleviate the pain, Employee lies down frequently and takes medication including Oxycontin and morphine sulfate. Employee testified she was no longer able to engage in any of her previous activities. She summarized by saying: Two months before the June 1996 accident, "I was very healthy[ ]" and able to do "what I wanted." Thereafter, she could not because "I can't walk[,] I can't stand[,] I can't drive." Similar testimony regarding Employee's post-accident pain, impairment, and restrictions was presented through Employee's husband and daughter.

When Employee saw Dr. Belz, he exhaustively reviewed her medical records. Moreover, he interviewed and examined Employee. From this, Dr. Belz concluded Employee should not lift, push, or pull over ten pounds, or lift from the floor level to knuckle level, or try any forward flexion of the lumbar spine greater than twenty degrees. He further opined she should only try to perform tasks at a stand/sit and lie down work station, that is, she had to have the ability to recline or lie down as needed. He concluded that these various restrictions, coupled with medicine used for pain relief, meant she could not be accommodated in the open labor market; consequently, she was permanently and totally disabled. He also determined that her permanent disability resulted from

"the last injury alone," i.e., stemming from the June 21, 1996, on-the-job accident.

A rehabilitation consultant, Wilbur Swearingin, saw Employee twice. He administered a number of tests and also reviewed Employee's medical records. From this, Swearingin opined that Employee was permanently and totally disabled based upon her injuries sustained in the June 21, 1996, accident. He reached this conclusion based on Employee's medical restrictions, her use of narcotic medication, her limited educational background, her history of manual labor, and advancing age (58 years). He also stated the restrictions that made Employee permanently and totally disabled *did not* exist before her June 21, 1996, injury.

Another physician, Dr. Woodward, examined Employee on behalf of Citizens. In his opinion, Employee could not "return to her previous regular duty work activity due to [the June 21] work-related injury," but only assigned her a disability rating of 15% to the body as a whole. He assigned no disability as a result of Employee's 1995 non-work related back injury.

At trial, Citizens argued that Employee's permanent, total disability was caused by a combination of her previous surgeries and medical conditions, rather than solely from the June 21, 1996, injury. The Administrative Law Judge ("ALJ") disposed of that argument as follows:

> "I find Dr. Belz opinions to be most credible with regard to permanent disability and his statement . . . that Claimant is permanently totally disabled from the June 21, 1996, injury, without regard to Claimant's prior surgeries or medical conditions, are both plausible and physically possible. *Kizior v. Trans World Airlines,* 5 S.W.3d 195 (Mo.App. W.D. 1999). The problems the Claimant suffers from that make her permanently

and totally disabled arise from the injury of June 21, 1996, alone."

Citizens appealed the ALJ's decision to the Commission. The Commission affirmed, with one member dissenting. Thereon, Citizens appealed to this court.

## DISCUSSION AND DECISION

The following is Citizens' single point relied on:

> "The . . . Commission . . . erred in [awarding Employee] . . . permanent and total disability benefits due to the work injury alone because *as a matter of law* the employer and insurer should not be liable for permanent and total disability benefits in that . . . [E]mployee had severe, preexisting disabilities to the same region of her body as the work injury which combined with her work-related injury and created a synergistic effect of greater disability than the work would cause standing alone."

(Emphasis supplied.)

Although not made clear by the point relied on, Citizens' position (as gleaned from elsewhere in its brief) appears to be this: Evidence that Employee had previous permanent, partial disabilities (5% body as a whole due to cancer and 12.5% of the body as a whole due to 1995 back injury) compels a finding, as a matter of law, that Citizens is not liable for the entire amount of the total, permanent disability award.

Citizens' position is flawed in multiple respects. First, such an argument ignores Dr. Belz's additional unequivocal and uncontradicted testimony that "*as a result of the last injury alone,* I determined [that Employee] was permanently and totally disabled and not able to be placed in the open market. . . ." (Emphasis supplied.)

■ Second, Citizens' argument disregards the Commission's credibility assess-

ment, i.e., it found "Dr. Belz's opinions to be most credible with regard to permanent disability and his statements ... that Claimant is permanently totally disabled from the June 21, 1996, injury, without regard to Claimant's prior surgeries or medical conditions, are both plausible and physically possible." When resolution of an issue in a workers' compensation case hinges on the credibility of witnesses, or the weight to be given to certain evidence, the scope of appellate review is significantly curtailed. *Cochran v. Indus. Fuels & Resources, Inc.*, 995 S.W.2d 489, 495[15] (Mo.App.1999). This follows because the weight to be given evidence rests with the Commission and it alone determines the credibility of witnesses. *Id.*

■ Third, Citizens misconceives the law when it argues that a "second injury fund" type analysis would have compelled Commission to find Citizens did not owe for all of the total, permanent disability award, i.e., the award should have taken into account Employee's previous partial, permanent disabilities. "Where a claimant is found to be totally and permanently disabled (as is the case here), § 287.220.1 [part of the "second injury fund" statute] fixes and limits an employer's liability to that part of the disability 'result[ing] from the last injury had there been no preexisting disability.' " *Kizior*, 5 S.W.3d at 200. Therefore, the first step in the analysis is to consider the employer's liability in isolation, namely, what "degree or percentage of disability ... would have resulted from the last injury had there been no preexisting disability." *Id.* at 200–01.

■ Here, Dr. Belz testified that the last injury, standing alone, rendered Employee totally and permanently disabled (100% disabled). Once that evidence was accepted and used by Commission (as it was), Employee's preexisting disability became irrelevant. *Id.* at 206. This follows because, according to section 287.220.1, the 100% rating was what had to be used in adjudicating the amount for which Citizens was liable. *Id. See also Stewart v. Johnson*, 398 S.W.2d 850, 852 (Mo.1966); *Vaught v. Vaughts, Inc.*, 938 S.W.2d 931, 942[6] (Mo.App.1997) (holding, "[o]nce Commission found Claimant had a disability before Accident 4 and that he was permanently and totally disabled after Accident 4, the next determination Commission should have made was the amount of disability resulting from Accident 4 'considered alone and of itself.' That determination would fix the amount owed Claimant by Respondents").

There was sufficient, substantial evidence to support Commission's determination that Employee was "permanently totally disabled from the June 21, 1996, injury, without regard to Claimant's prior surgeries or medical conditions." Consequently, the method used in calculating Citizens' liability for Employee's injury has not been shown to be improper under section 287.220. Thus, Commission did not err in its determination that Citizens was liable for 100% of Employee's disability. Point denied.

The award by Commission is affirmed.

PREWITT and PARRISH, JJ., concur.