**Opinion issued November 20, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00374-CR

_____

**JUAN VILLAREAL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1353512**

---

## MEMORANDUM OPINION

A jury found appellant, Juan Villareal, guilty of the felony offense of

possession of a controlled substance, namely cocaine, weighing between 4 and 200

grams.[1]  After finding true the allegation in an enhancement paragraph that he had previously been convicted of a felony offense, the jury assessed his punishment at confinement for 25 years and a fine of $10,000.  In his sole issue, appellant contends that the trial court erred in denying his motion to suppress evidence.

We affirm.

### Background

Houston Police Department ("HPD") Officer C. Dexter testified that on July 7, 2012, while on patrol around 2:00 a.m., he saw appellant drive his car into a Walgreens store parking lot "at a fast speed," pull the car "directly in front" of the store's doors, and stop "across two handicap parking spaces."  Appellant left the engine running, exited the car, "held his waistband," and "ran into the store at a fast speed."  Dexter believed that appellant was committing a robbery.

Officer Dexter drove his patrol car into the parking lot and parked out of the view from the Walgreens' doorway.  As Dexter "was pulling up," he looked at appellant's car to verify that there were no other passengers inside.  Upon exiting his patrol car, he did not enter the Walgreens, but instead looked into the store's entrance to make sure "everything was okay."  Dexter saw a security guard "sitting down where he normally sits" and appellant speaking to an employee at the front cash register.

---

[1]    *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(a), (d) (Vernon 2010).

Officer Dexter then proceeded to appellant's car to look inside it for weapons because he was going to issue appellant a citation and instruct him to move his car. Dexter noted that the driver's side window of the car was "cracked" open, and he smelled "the strong odor of marijuana coming from inside th[e] vehicle." When he returned to the store and asked appellant to come outside and supply his identification, Dexter "smell[ed] a strong odor of marijuana coming from [appellant]." Appellant proceeded to move his car "about 40 feet down the parking lot to an empty space." And Dexter, in turn, pulled his patrol car behind appellant's car.

Officer Dexter then noticed appellant, who was still in his car, "reaching down towards the floorboard of [his] car . . . [a]nd whatever he was doing . . . was taking a long time." Dexter exited his patrol car and instructed appellant "to get out." Appellant exited his car, but "immediately started walking back into the Walgreens," although Dexter had "command[ed]" him to stop. Appellant refused, became "belligerent," and would not take his hands out of his pockets. Dexter handcuffed appellant, patted him down for weapons, and put him in the backseat of his patrol car.

Officer Dexter then returned to appellant's car, but did not open the door. He looked into the car through the driver's side window with his flashlight and saw, in "plain view," "a small baggie of . . . white powder consistent with a

packag[e] of cocaine." The "package had a Batman logo on it. . . . [I]n the center console there was [also] a scale and a small baggie containing [a large amount] of empty baggies with the same Batman logo." Dexter proceeded to his patrol car and asked appellant for his keys, which appellant indicated were on the ground near the patrol car. After Dexter located the keys, appellant, voluntarily and unprompted, told Dexter that "there's nothing inside the vehicle" and he "could check inside of it."

Thereafter, Officer Dexter searched appellant's car. He recovered the "small baggie of . . . white powder" and the other items from the center console; he also found "a baggie containing more narcotics" inside the speaker on the floorboard of the driver's side of the car. Another HPD officer, O. Sampson, who had arrived on the scene, recovered "additional narcotics" inside the floorboard speaker on the passenger's side of the car.

## Standard of Review

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts de novo. *Id.* We generally consider only the evidence adduced at the suppression hearing unless the parties consensually re-litigate the issue at trial, in which case we also consider

4

relevant trial testimony. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility, and it may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). If, as in this case, the trial court makes express findings of fact, we review the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports the fact findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48.

## Motion to Suppress Evidence

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress the evidence found in his car because it was obtained as a result of an illegal and warrantless search.

The Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution protect against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *State v. Betts*, 397

5

S.W.3d 198, 203 (Tex. Crim. App. 2013). A search conducted without a warrant issued upon probable cause is per se unreasonable subject to only a few specifically established and well-delineated exceptions. *See Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). Here, it is undisputed that appellant's car was searched without a warrant.

In the trial court, appellant moved to suppress the "narcotics and drug related items" found in his car by Officers Dexter and Sampson. Specifically, Dexter testified that he seized the following from appellant's car: (1) "a small baggie of . . . white powder," with a "Batman" logo on it; (2) "a scale"; (3) "a small baggie[,] containing [a large amount of] empty baggies," also with "Batman" logos on them; and (4) "a baggie[,] containing more narcotics." Dexter saw items (1) through (3) in "plain view" in the car's center console, and he found item (4) inside the speaker on the driver's side floorboard. Additionally, Sampson seized more "narcotics" from the floorboard speaker on the passenger's side of the car.

Initially, we note that Officer Dexter saw the "small baggie of . . . white powder," the "scale," and other "empty baggies" in "plain view." Contraband seen in "plain view" may be seized without a warrant. *See Texas v. Brown*, 460 U.S. 730, 736–39, 103 S. Ct. 1535, 1540–42 (1983). This is because the observation of evidence located in "plain view" does not constitute a search subject to Fourth Amendment protection. *See Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App.

6

2000); *Long v. State*, 532 S.W.2d 591, 594 (Tex. Crim. App. 1975); *see also Swarb v. State*, 125 S.W.3d 672, 680 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (observation of property in "plain view" involves no invasion of privacy).

The "plain view" doctrine requires that law enforcement officers: (1) be legally present when making their observation and (2) have probable cause to associate any visible evidence with criminal activity. *Walter*, 28 S.W.3d at 541. A law enforcement officer need not have actual knowledge that an observed item is contraband in assessing whether it constitutes evidence of criminal activity, but he must have probable cause to connect the item with criminal activity. *Brown*, 460 U.S. at 741–42, 103 S. Ct. at 1543; *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991). An officer may use his training and experience in determining whether an item seen in plain view constitutes contraband. *Brown*, 460 U.S. at 746, 103 S. Ct. at 1545–46 (Powell, J., concurring) (citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981)); *Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Here, Officer Dexter approached appellant's car while it was parked in a public parking lot, and he shone his flashlight into the driver's side window, while he remained outside and did not open the car's doors. In the car's center console, Dexter saw, "a small baggie of . . . white powder" with a "Batman logo on it," "a scale[,] and a small baggie containing [a large amount of] empty baggies" with

"the same Batman logo[s]" on them. Dexter testified that he has received narcotics training, has come into contact with cocaine "quite a bit," and has experience with "these types of drugs." He explained that the "white powder" he saw was "consistent with powder cocaine." He noted that narcotics dealers use scales to "break down" cocaine into smaller amounts for sale, and baggies are used to "package[e] it." He stated that, generally, a logo on narcotics packaging is used as "an unofficial trademark for a drug dealer" and the use of "multiple baggies packaged together" is for selling narcotics.

Based on the foregoing, the trial court could have reasonably concluded that Dexter's "plain view" observation of the evidence located in the center console of appellant's car did not constitute a search implicating the Fourth Amendment. *See Swarb*, 125 S.W.3d at 680 ("[T]he officers . . . approached appellant's vehicle in a parking lot open to the public and shone a flashlight into appellant's vehicle, thereby observing the methamphetamine in plain view . . . . Looking inside the vehicle, even with the use of a flashlight, does not implicate Fourth Amendment protections . . . .").

Following his "plain view" observation of the "white powder" and other narcotics-related items, Officer Dexter asked appellant for the keys to his car. After appellant indicated that the keys were on the ground, and Dexter located them, appellant volunteered, unprompted, that Dexter "could check inside of [the

8

car]" because "there's nothing inside" of it.  Upon entering the car, Dexter retrieved the "small baggie of . . . white powder," the "scale," and the "small baggie containing [a large amount of] empty baggies" that he had previously seen. The "white powder" field-tested positive for cocaine.  Dexter also recovered "a baggie[,] containing more narcotics," from inside the speaker on the driver's side floorboard of the car.  And once Officer Sampson arrived at the scene, he found "additional narcotics" in the floorboard speaker on the passenger's side of the car.

Although appellant argues that the officers' search of his car was illegal because it was done without a warrant or probable cause, Officer Dexter testified that appellant voluntarily gave his consent for the search.  One of the specifically established exceptions to the requirements of both a search warrant and probable cause to search is a search that is conducted pursuant to consent, so long as the consent is voluntary.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 223, 93 S. Ct. 2041, 2043, 2045 (1973); *Reasor*, 12 S.W.3d at 817.  In other words, if consent is given voluntarily, a search incident to that consent is not unreasonable.  *Reasor*, 12 S.W.3d at 818.  Here, appellant has not argued that his consent was involuntary and the record does not demonstrate that appellant's consent was anything but voluntarily given.[2]  Accordingly, the trial court could have reasonably concluded

---

[2]     The validity of consent to search is a question of fact to be determined from all the circumstances.  *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S. Ct. 417, 421 (1996); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).  The State is

that appellant's consent to the search of his car rendered the search valid under the Fourth Amendment. *See Kirsch v. State*, 276 S.W.3d 579, 588–89 (Tex. App.—Houston [1st Dist.] 2008), *aff'd*, 306 S.W.3d 738 (Tex. Crim. App. 2010).

Moreover, the trial court could have reasonably concluded that because Officer Dexter had probable cause to search appellant's car, a search warrant was not necessary. *Dickey v. State*, 96 S.W.3d 610, 612 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (warrantless search valid, even without consent, when automobile exception applies). Under the automobile exception to the warrant requirement, a law enforcement officer "may conduct a warrantless search of a motor vehicle if the officer has probable cause to believe the vehicle contains evidence of a crime." *Powell v. State*, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994). "Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005).

Officer Dexter testified that before he searched appellant's car, he smelled "the strong odor of marijuana coming from inside th[e] vehicle" and "could smell a

required to prove the voluntariness of consent by clear and convincing evidence. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Here, Officer Dexter's testimony regarding appellant's consent was not disputed or contradicted.

strong odor of marijuana coming from [appellant]." Texas courts, including our own, have repeatedly held that the smell of marijuana alone is sufficient to establish probable cause to search a vehicle. *See Marsh v. State*, 684 S.W.2d 676, 679 (Tex. Crim. App. 1984) (evidence sufficient to establish probable cause for search when officer smelled marijuana as he approached defendant's vehicle); *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979) (odor of marijuana provided probable cause to search defendant's vehicle); *Dickey*, 96 S.W.3d at 613–14 (odor of marijuana coming from car alone constitutes probable cause). Thus, even without appellant's consent, the trial court could have reasonably concluded that because Dexter had probable cause to search appellant's car, the search did not violate the Fourth Amendment.

Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress the evidence seized from his car.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish.   TEX. R. APP. P. 47.2(b).