**Paul BIRDSONG, Employee–Respondent,**

v.

**WASTE MANAGEMENT and Insurance Company of the State of Pennsylvania, Employer/Insurer–Appellants,**

**and**

**Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Additional Party–Respondent.**

**No. 25996.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 26, 2004.

**134**

Mark Cordes, Hugh S. O'Sullivan, St. Louis, for appellants Waste Management and Ins. Co. of the State of Pennsylvania.

B. Michael Korte, St. Louis, MO, for respondent Paul Birdsong.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Becky J.W. Dias, Asst. Atty. Gen., Springfield, MO, for respondent Second Injury Fund.

JEFFREY W. BATES, Chief Judge.

Paul Birdsong ("Birdsong") sustained a compensable injury while in the employ of Waste Management ("Employer"), whose liability for workers' compensation coverage was insured by Insurance Company of the State of Pennsylvania ("Insurer"). After the Labor and Industrial Relations Commission ("Commission") made a final award of workers' compensation benefits for permanent total disability and temporary total disability to Birdsong, Employer and Insurer appealed. We affirm.

## I. Statement of Facts and Procedural History

On November 18, 1998, Birdsong sustained an injury to his left shoulder and cervical spine while working for Employer. Diagnostic studies revealed he had herniated discs at the levels of C6–C7 and C7–T1. On December 9, 1998, Birdsong ceased working and began receiving temporary total disability benefits. Five days later, he underwent an anteriocervical discectomy and C6 through T1 fusion. Following this surgery, Birdsong continued to have significant health problems. These problems included: (1) impotence; (2) a neurogenic bladder; (3) a significant left shoulder soft tissue contracture; (4) neurological deficits in his left hand; (5) weakness in his left leg; (6) a gait disturbance; (7) disabling pain; and (8) depression.

On June 25, 1999, Birdsong stopped receiving temporary total disability benefits, and he returned to work. His physical limitations, however, made it difficult for him to perform his duties. Birdsong was terminated in June 2000 because Employer claimed it did not have any work within the restrictions prescribed by Birdsong's doctors. Birdsong was not able to obtain employment at any other job after he was fired by Employer.

Prior to being injured in 1998, Birdsong had suffered two other injuries which resulted in preexisting disability. In October 1987, he sustained a lumbosacral sprain injury to his low back, for which he received conservative treatment. In May 1993, a pallet fell on him while he was at work, causing an injury to his low back and left shoulder. This latter injury resulted in a workers' compensation settlement in which Birdsong was rated as having a 10% permanent partial disability to his body as a whole.

In August 1999, Birdsong filed a claim for workers' compensation benefits against Employer, Insurer and the Second Injury Fund ("the Fund"). A hearing on Birdsong's workers' compensation claim was held before an administrative law judge ("ALJ") on April 8, 2002. At the hearing, Birdsong's attorney offered the deposition of Dr. Raymond Cohen, who had evaluated Birdsong at the attorney's request. Dr. Cohen's deposition was admitted in evidence by agreement of all parties.

In Dr. Cohen's deposition, he testified that Birdsong's 1998 injury caused the following injuries: (1) a cervical myelopathy secondary to cord compression from disc herniation at C6–C7 and C7–T1; (2) weakness in the left arm and lower extremities, as well as a gait disorder, due to cervical myelopathy; and (3) a cervical fusion for disc herniation at C6–C7 and C7–T1. In addition, Dr. Cohen diagnosed Birdsong as having a preexisting chronic lumbosacral strain/sprain with myalgia due to the October 1987 injury. Dr. Cohen then gave the following testimony in response to questions asked by Birdsong's attorney:

Q. Are you able, do you attribute any disability to the four diagnoses you have told us about here today and/or any preexisting conditions and, specifically, the chronic lumbosacral strain/sprain with myalgia that you have also told us about, doctor?

A. Yes.

Q. And what is, how much disability do you attribute to the various conditions?

A. At the level of his neck a sixty-five percent permanent partial disability of the whole person. A whole person disability of twenty percent due to the depression. And twenty-five percent permanent partial disability of the whole person at the level of

the lumbar spine from his preexisting condition[.]

. . . .

Q. Do you have an opinion as to whether or not those conditions, the four work related diagnoses we have been talking about combined in anyway [sic] with his preexisting lumbar disability you have just told us about?

A. Yes.

Q. What is that opinion, doctor?

A. That his preexisting lumbar condition does combine with his primary work related injury to create a greater overall disability or a synergistic affect [sic].

Q. Do you have any opinion as to the extent of Mr. Birdsong's disability as a result of that combined disability you have just told us about?

A. In that question you mean a percentage?

Q. Whether it's a percentage or what is your opinion? Let me ask it this way. Do you have an opinion about the extent of Mr. Birdsong's overall disabilities at the time of his last visit to you?

A. Yes.

Q. And what is that opinion, doctor?

A. That he's permanently and totally disabled and not capable of gainful employment due to that combination of disabilities.

Later in the deposition, Dr. Cohen was questioned by the Fund's attorney and gave the following testimony:

Q. Okay, Doctor, it's your understanding that Mr. Birdsong fully performed his duties at work prior to this accident [on November 18, 1998]; is that correct?

A. Yes.

. . . .

Q. Okay. Well, is there any notation that he had any kind of treatment that you would not qualify as conservative to his lumbar spine?

A. No.

Q. Okay. Given all of that, doctor, and given the quite high percentage of permanent partial disability that you rate at his cervical spine, what would be your opinion if Mr. Birdsong had not earlier suffered that lumbar spine, you think you would still qualify him as permanently totally disabled?

A. Assuming he didn't have the back condition?

Q. The lumbar condition, right.

A. Sure, lumbar.

Q. I'm just trying to be specific.

A. Assuming that condition didn't exist, my answer would be yes.

Q. That he would be permanently totally disabled?

A. Yes.

During recross-examination by the attorney for the Employer/Insurer, Dr. Cohen gave the following testimony:

Q. Doctor, Mr. Blum [the Fund's attorney] had asked you some questions to assume that Mr. Birdsong had no conditions involving the lumbar spine. Mr. Birdsong did have prior injuries and conditions involving the lumbar spine; is that correct?

A. Yes.

Q. And he did receive treatment and was diagnosed with various conditions; is that correct?

A. Yes.

Q. Okay. And those conditions were permanent conditions?

A. Yes.

Q. And, doctor, your opinion today as to whether Mr. Birdsong is permanently and totally disabled, that is based on the combination of all of his injuries and disabilities; is that correct?

A. Yes.

Another issue addressed at the hearing was Birdsong's entitlement to benefits for temporary total disability. There was conflicting evidence concerning the date on which Birdsong reached maximum medical improvement from his 1998 injuries. Dr. Cohen evaluated Birdsong on January 4, 2001 and prepared a supplemental medical rating report. By agreement of the parties, this report was admitted in evidence along with Dr. Cohen's deposition. In the report, Dr. Cohen concluded Birdsong had been totally temporarily disabled from June 2000 to January 4, 2001. A different view was held by Dr. Woodward, who was assigned to treat Birdsong by Insurer. Dr. Woodward issued his final rating report on February 5, 2002. In Dr. Woodward's report, he concluded Birdsong had reached maximum medical improvement for his spinal and urological conditions as of that date.

The ALJ concluded that: (1) the accident of November 18, 1998, caused Birdsong to sustain a permanent partial disability of 45% to the body as a whole; and (2) when this accident occurred, Birdsong was suffering from a preexisting 20% permanent partial disability due to his lumbar spine injury, which constituted a hindrance or obstacle to his employment. Therefore, he awarded Birdsong benefits for permanent partial disability from both the Employer/Insurer and the Fund. The ALJ also awarded Birdsong temporary total disability benefits for the period from July 1, 2000, to February 5, 2002.

The Fund filed an application for review with the Commission, which modified the

ALJ's decision only as to the issue of liability for permanent total disability. The Commission adopted all other aspects of the ALJ's findings, conclusions and decision. The Commission decided the Fund was not liable to pay permanent total disability benefits to Birdsong because his 1998 injury, in and of itself, rendered him permanently and totally disabled. The Commission based its conclusion on the testimony elicited from Dr. Cohen by the Fund's attorney:

> Dr. Raymond Cohen, D.O., was the only expert to offer an opinion on the issue of whether it was the last injury alone or a combination of claimant's injuries that rendered claimant permanently and totally disabled. Dr. Cohen offered two opinions on this issue. We are persuaded by Dr. Cohen's opinion [given in response to the Fund attorney's questions] because it is the only opinion in accord with the analysis provided by the Supreme Court [in *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 248 (Mo. banc 2003) ].

Therefore, the Commission concluded Employer and Insurer were responsible for paying the entire amount of permanent total disability benefits due Birdsong. Employer and Insurer, whom we collectively refer to as "Appellants" in the remainder of this opinion, filed a timely notice of appeal from the Commission's decision.

## II. Standard of Review

■ In this appeal from a final award by the Commission, we review the findings and award of the Commission rather than those of the ALJ. *McDermott v. City of Northwoods Police Dept.*, 103 S.W.3d 134, 137 (Mo.App.2002). With one exception, the Commission affirmed and adopted the findings and conclusions of the ALJ.

Therefore, we review the findings and conclusions of the ALJ as adopted by the Commission on all issues except as to the determination of liability for permanent total disability. *See Sutton v. Vee Jay Cement Contracting Co.*, 37 S.W.3d 803, 807 (Mo.App.2000).

■ An appellate court "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient, competent evidence in the record to warrant the making of the award." § 287.495.1.[1] "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

■ On appeal, "no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding." § 287.495.1. Therefore, we defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony. *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 234 (Mo.App.2003); *Chatmon v. St. Charles County Ambulance Dist.*, 55 S.W.3d 451, 455–56 (Mo.App.2001). In this case, all expert testimony on medical and vocational issues was presented via deposition. When witnesses are deposed and do not testify live before the ALJ, the Commission is just as able as the ALJ to determine credibility from the written rec-

---

1. All references to statutes are to RSMo (2000).

ord. *Thorsen v. Sachs Elec. Co.,* 52 S.W.3d 611, 619 (Mo.App.2001).

■ Commission decisions that are interpretations or applications of law, on the other hand, are reviewed for correctness without deference to the Commission's judgment. *Orr v. City of Springfield,* 118 S.W.3d 215, 217 (Mo.App.2003); *Maxon v. Leggett & Platt,* 9 S.W.3d 725, 729 (Mo.App.2000). We independently review questions of law. *Johnson v. Denton Construction Co.,* 911 S.W.2d 286, 287 (Mo. banc 1995).

### III. Discussion

Appellants present two issues for decision. First, they contend the Commission erred in not holding the Fund liable to pay part of Birdsong's permanent total disability benefits. Second, they contend the Commission erred in holding them liable to pay Birdsong temporary total disability benefits through February 5, 2002.

### Point I—Fund Liability

■ Appellants contend the Commission's decision that the Fund was not liable to pay any part of Birdsong's permanent total disability benefits is against the overwhelming weight of the evidence because the testimony elicited from Dr. Cohen by the Fund's attorney was "hypothetical" in nature and conflicted with Dr. Cohen's other opinions concerning the cause and extent of Birdsong's disability. We find both arguments unpersuasive.

■ The Fund was created by statute and permits a permanently disabled employee, in certain defined and limited circumstances, to receive benefits from both his employer and the Fund if the employee had a prior, permanent disability serious enough to constitute a hindrance or obstacle to employment. *See* § 287.220.1; *Hughey v. Chrysler Corp.,* 34 S.W.3d 845, 847

(Mo.App.2000). In order to decide whether the Fund has any liability, "the first determination is the degree of disability from the last injury considered alone." *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 248 (Mo. banc 2003). For this reason, "pre-existing disabilities are irrelevant until the employer's liability for the last injury is determined." *Id.* If the employee's last injury in and of itself rendered the employee permanently and totally disabled, the Fund has no liability; the employer is responsible for the entire amount of compensation. *Id.*

Dr. Cohen was the only physician who opined that Birdsong was permanently and totally disabled. The relevant portions of Dr. Cohen's deposition testimony have been set out earlier in our opinion. As these quotations demonstrate, Dr. Cohen testified in response to questions from Birdsong's attorney and Employer's attorney that Birdsong was permanently and totally disabled based on the combination of disabilities that resulted from his 1987 and 1998 injuries. Section 287.220.1 specifically requires that, "[i]f the previous disability or disabilities, whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, the minimum standards under this subsection for a body as a whole injury or a major extremity injury shall not apply and the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself...." *Id.* Therefore, the first determination the Commission had to make was the degree of disability resulting from Birdsong's last injury, considered alone. *Landman,* 107 S.W.3d at 248.

It was entirely appropriate for the Fund's attorney to conduct his cross-examination in a manner designed to elicit testimony satisfying the statutory mandate

contained in § 287.220.1 and the Supreme Court's holding in *Landman*. The Fund attorney's cross-examination questions required Dr. Cohen to consider Birdsong's last injury in isolation and state whether this injury, in and of itself, was totally disabling. *See Lockman v. Citizen's Memorial Hosp.*, 140 S.W.3d 214, 218 (Mo. App.2004) (first step in the analysis is to consider employer's liability in isolation and determine what degree of disability would have resulted from the last injury had there been no preexisting disability); *Kizior v. Trans World Airlines*, 5 S.W.3d 195, 200 (Mo.App.1999) (same holding). Thus, these questions properly sought Dr. Cohen's expert medical opinion on the issue determinative of the Fund's liability, *viz.*: whether Birdsong was still permanently and totally disabled without considering the preexisting injury to his lumbar spine. In response to this inquiry, Dr. Cohen opined that Birdsong was still permanently and totally disabled by his last injury alone. Asking Dr. Cohen to express his opinion based upon the correct legal standard, by framing the questions to exclude consideration of a legally-irrelevant prior disability, did not render the opinion "hypothetical" so as to prevent the Commission from relying upon his answers.[2]

Appellants also argue the Commission could not rely on Dr. Cohen's testimony because it was in conflict with his other opinions. This same issue was addressed by the Eastern District in *Maas v. Treasurer of the State of Missouri*, 964 S.W.2d 541 (Mo.App.1998). There, Dr. Cohen determined that the claimant was permanently and totally disabled when he fell and sustained a significant spinal cord injury. Four years later, Dr. Cohen reevaluated the claimant to address Second Injury Fund liability and determined he was permanently and totally disabled due to a combination of the spinal cord injury and preexisting disabilities. *Id.* at 545. The Commission found that Dr. Cohen's new opinion "amounts to nothing more than stating that claimant's permanent and total disability also results from a combination of the primary work injury and his preexisting conditions. It is clear from Dr. Cohen's testimony that Mr. Maas was permanently and totally disabled as a result of the disabilities caused by [the] fall." *Id.* On appeal, the claimant argued that the Commission's finding was not supported by the record. The Eastern District rejected this argument because the variance in Dr. Cohen's opinions presented a question of fact for the Commission to decide:

> We defer to the Commission on issues concerning credibility and weight to be

---

**2.** A medical expert is routinely required to correctly meld medical and legal concepts in his testimony in order to translate "a medical definition into a purely legal standard capable of resolving particular cases." *Bass v. Nooney Co.*, 646 S.W.2d 765, 781 n. 4 (Mo. banc 1983). For example, in a medical malpractice case, an expert must express his opinion with reference to the correct legal standard in order for his testimony to be relevant and admissible. *See, e.g., Swope v. Printz*, 468 S.W.2d 34, 40 (Mo.1971) (an expert must incorporate the legal standard of care into his testimony to show that it is based upon this objective legal test, rather than the expert's own undisclosed subjective conception of ac-

ceptable medical standards); *Ladish v. Gordon*, 879 S.W.2d 623, 634–35 (Mo.App.1994) (generally, it must appear somewhere in the context of the expert's testimony that the proper objective legal standard is the standard being employed); *Dine v. Williams*, 830 S.W.2d 453, 456 (Mo.App.1992) (same holding). We believe the same is true here. The Fund's liability could not be determined until the Commission assessed "the disability resulting from the last injury considered alone and of itself...." § 287.220.1. The only expert testimony satisfying this requirement was elicited from Dr. Cohen by the Fund's attorney.

given to conflicting evidence and testimony. The Commission is free to disregard testimony of a witness even if no contradictory or impeaching evidence is introduced. It is in the Commission's sole discretion to determine the weight to be given expert opinions. The Commission was free to believe Dr. Cohen's 1992 opinion that the September 5, 1991 fall was the sole cause of the permanent total disability and disregard Dr. Cohen's later opinion that claimant was permanently and totally disabled due to the combination of the primary work injury and his preexisting conditions.

*Id.* (citations omitted).

■ We reach the same conclusion here. Dr. Cohen testified that: (1) Birdsong was permanently and totally disabled due to a combination of disabilities resulting from his 1987 and 1998 injuries; and (2) Birdsong was permanently and totally disabled by his last injury in 1998. The Commission believed the latter opinion, rather than the former. "The decision to accept one of two conflicting medical opinions is a question of fact for the Commission." *Chatmon*, 55 S.W.3d at 457. We defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony. *Pavia*, 118 S.W.3d at 234. Dr. Cohen's testimony constituted competent and substantial evidence upon which the Commission could rely in concluding that the Fund was not liable to pay any portion of Birdsong's permanent and total disability benefits. *See Lockman*, 140 S.W.3d at 218 (physician's testimony that employee's last injury, standing alone, rendered employee totally and permanently disabled constituted sufficient, substantial evidence to support the Commission's determination holding employer liable for 100% of employee's disability). Appellants' first point is denied.

## Point II—Temporary Total Disability Benefits

■ Appellants next contend the Commission's award of temporary total disability benefits to Birdsong through February 5, 2002, is against the overwhelming weight of the evidence. Appellants claim such benefits should have ended on January 4, 2001, which was the date when Dr. Cohen concluded Birdsong was permanently and totally disabled.

■ Temporary total disability benefits are intended to cover the claimant's healing period. *Boyles v. USA Rebar Placement, Inc.*, 26 S.W.3d 418, 424 (Mo. App.2000). "Temporary total disability awards are owed until the claimant can find employment or the condition has reached the point of maximum medical progress." *Cooper v. Medical Center of Independence*, 955 S.W.2d 570, 575 (Mo. App.1997).

It is undisputed that Birdsong did not return to work after he was terminated by Employer in June 2000. There was conflicting evidence concerning the date on which Birdsong had reached the point of maximum medical progress from his 1998 injuries. In Dr. Cohen's supplemental rating report, he concluded Birdsong had been totally temporarily disabled from June 2000 to January 4, 2001. Dr. Woodward, the physician selected by Insurer to treat Birdsong, reached a different conclusion. In Dr. Woodward's final rating report, he stated Birdsong had reached maximum medical progress for his spinal and urological conditions as of February 5, 2002.

Once again, the credibility and weight of these competing expert opinions presented a question of fact for the Commission to decide. Since the Commission chose to rely upon Dr. Woodward's opinion concerning the date when Birdsong reached

the point of maximum medical progress, we defer to that determination. *See Chatmon,* 55 S.W.3d at 459. The Commission's award of temporary total disability benefits to Birdsong through February 5, 2002, is supported by competent and substantial evidence. Appellants' second point is denied.

## IV. Decision

The Commission's factual findings that Birdsong was permanently and totally disabled by his 1998 injuries alone and that he is entitled to temporary total disability benefits through February 5, 2002, are supported by competent and substantial evidence. The Supreme Court was careful to point out in *Hampton* that it would be the "rare case when the award is contrary to the overwhelming weight of the evidence." *Hampton,* 121 S.W.3d at 223. After considering the whole record, we conclude this case does not fall within that category. Therefore, the Commission's award is affirmed.

PARRISH, P.J., and SHRUM, J., Concur.