

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| SHANE NULL, | ) | No. ED100191 |
| | ) | |
| Respondent, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| vs. | ) | |
| | ) | |
| NEW HAVEN CARE CENTER, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| and | ) | |
| | ) | |
| TREASURER OF MISSOURI AS | ) | |
| CUSTODIAN OF THE SECOND | ) | |
| INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | FILED: March 18, 2014 |

Introduction

New Haven Care Center, Inc. and Missouri Nursing Home Insurance Trust ("Employer")

appeal from a final award issued by the Labor and Industrial Relations Commission

("Commission") finding Shane Null ("Null") permanently and totally disabled as a result of a

work injury. The Commission found that Null's permanent and total disability was caused by his

last work injury alone, and therefore denied Null's claim against the Second Injury Fund

("Fund"). On appeal, Employer challenges the Commission's finding that Null's permanent and

total disability resulted from the last accident alone, thereby relieving the Fund of any liability.

Employer also challenges the Commission's award of future medical treatment benefits. Finding that the Commission's decision is supported by competent and substantial evidence, we affirm the Commission's award. We dismiss point three of Employer's appeal for failure to comply with the requirements of Rule 84.04.

Factual and Procedural Background

Null began working for Employer, a ninety-bed skilled nursing facility, on March 27, 1989. Throughout his tenure, Null held a variety of jobs including nurse's aide, certified medical technician, and maintenance worker. Over the last four years of his employment, Null held the position of maintenance supervisor, during which he supervised approximately 13 other employees in caring for the building and outside grounds.

On May 27, 2004, Null was injured at work while operating a riding lawn mower that fell over a 12-foot slope. Null was taken to the emergency room at St. John's Hospital where he was diagnosed with a single-level L1 compression fracture to his spine, concussive injury, and multiple contusions and abrasions. In the ensuing months, Null sought treatment from several physicians for continued pain in his back, including his primary care physician Dr. Thomas Davis ("Dr. Davis"). Dr. Davis ordered physical therapy for the back pain and maintained Null's pain medications.

When Null continued to experience pain in his back, he was referred to Dr. Edwin Dunteman ("Dr. Dunteman") for pain management. Dr. Dunteman diagnosed Null with compression fractures, spondylosis and lumbago, and advised Null to limit his work to four hours per day with a fifteen-pound lifting restriction. Dr. Dunteman treated Null with a facet injection, sympathetic block, and rhizotomy in February and March of 2005. In June 2005, Dr. Dunteman performed a functional capacity evaluation on Null and thereafter concluded that Null

had reached a point of maximum medical improvement and was completely disabled from his employment.

Null also fractured a small bone in his right ear as a result of the lawn mower accident. Null had experienced problems with his ears since birth, and had been under the care of Dr. James Benecke, an otologist and neurotologist since 1999. Following the accident, Dr. Benecke performed surgery on Null's right ear.

Null filed a workers' compensation claim against Employer and the Fund on November 28, 2005, and an amended claim on November 9, 2010. Null's amended workers' compensation claim alleged that he suffered from psychiatric conditions and injuries to his back, right ear, and body as a whole as a result of the lawn mower accident. Null also alleged that he had injury to his low back and left hand, hearing loss, and psychiatric conditions prior to the lawn mower accident.

On July 12, 2011, a hearing was conducted before Administrative Law Judge Grant Gorman ("the ALJ"). Null testified that he received his high school diploma and thereafter received training as a welder, nurse's aide, and a certified medical technician. Null also testified about his prior medical conditions, including his history of back pain going back to 1994 and his history with anxiety and depression dating to the 1990s. Null testified that his back problems and psychiatric conditions worsened after the lawn mower accident, and that his back pain is chronic, causing him trouble sitting, standing, walking, and bending.

On October 13, 2011, the ALJ issued his decision finding Null permanently and totally disabled ("PTD"). The ALJ found Null's PTD resulted from the lawn mower accident alone, and assessed liability against the Employer, which was ordered to pay Null PTD benefits at the rate of $488.12 per week. The ALJ also awarded Null future medical care benefits to cure and

relieve the effects of his work injury, including the injuries to his back, right ear, and psychiatric conditions. The Fund was found not liable for any payments to Null.

On June 21, 2013, the Commission affirmed the award and decision of the ALJ in a two-to-one decision. The majority adopted the decision of the ALJ, and Commissioner James Avery wrote separately, dissenting. This appeal follows.

Points on Appeal

Employer presents three points on appeal. First, Employer asserts that the Commission erred in concluding that Null's last accident alone rendered him PTD. Second, Employer contends that the Commission erred in awarding Null open medical for treatment of his right ear, post-traumatic stress disorder ("PTSD"), and for narcotic drug pain management because the record lacks sufficient evidence supporting the award. Finally, Employer alleges that the Commission erred in failing to determine whether Null had a reasonable basis to discontinue the vocational rehabilitation services tendered by Employer.

Standard of Review

In reviewing a workers' compensation final award, "we review the findings and award of the Commission rather than those of the ALJ." Birdsong v. Waste Mgmt., 147 S.W.3d 132, 137 (Mo. App. S.D. 2004). We review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

> (1) That the commission acted without or in excess of its powers;
> (2) That the award was procured by fraud;
> (3) That the facts found by the commission do not support the award;
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1; Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222 (Mo. banc 2003).

4

On appeal, "no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the Commission within its powers shall be conclusive and binding." Section 287.495.1. We defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony. Birdsong, 147 S.W.3d at 137. On appeal, our task is solely to determine, based on the whole record, whether the award is supported by competent and substantial evidence. Id. When the evidence before the Commission would warrant either of two opposed findings, we are bound by the Commission's determination despite supportive evidence for the contrary finding. Hornbeck v. Spectra Painting, Inc., 370 S.W.3d 624, 629 (Mo. banc 2012). Unless the decision is clearly contrary to the overwhelming weight of the evidence, we will affirm the decision of the Commission. Hampton, 121 S.W.3d at 223.

Discussion

It is incumbent upon us to first note several deficiencies in Employer's brief. Rule 84.04(d)(2) requires that for each Point Relied On, appellant must identify the administrative ruling or action challenged, provide a concise statement of the legal reasons for the claim on appeal, and explain why the legal reasons support the claim of error. Johnson v. Buffalo Lodging Associates, 300 S.W.3d 580, 582 (Mo. App. E.D. 2009); Rule 84.04(d)(2). The point relied on should be stated in substantially the following form:

> The [name of agency] erred in [identify the challenged ruling or action], because [state the legal reasons for the claim of reversible error, including the reference to the applicable statute authorizing review], in that [explain why, in the context of the case, the legal reasons support the claim of reversible error].

Rule 84.04(d)(2). The "challenged ruling or action" refers to an action taken by the agency. Waller v. A.C. Cleaners Mgmt., Inc., 371 S.W.3d 6, 10 (Mo. App. E.D. 2012). The legal reason for the error must refer to the applicable statute authorizing review. Id. In a workers' compensation case, this means that the error must explicitly refer to one of the four above-

5

referenced statutory grounds for reversal set out in Section 287.495.1. Parker v. Action Contracting Corp., 100 S.W.3d 168, 171 (Mo. App. W.D. 2003).

Here, Employer has failed to provide a concise statement of the legal reasons for the claim on appeal and explain why the legal reasons support the claim of error in each of its three Points Relied On. Importantly, none of Employer's three Points Relied On refers to one of the four statutory grounds for reversal enumerated in Section 287.495.1. Compliance with the Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and arguments that have not been asserted. Stickley v. Auto Credit, Inc., 53 S.W.3d 560, 562 (Mo. App. W.D. 2001). Insufficient points relied on preserve nothing for review and constitute grounds for dismissal. Washington v. Blackburn, 286 S.W.3d 818, 821 (Mo. App. E.D. 2009).

Despite the mandatory nature of the requirements of Rule 84.04, this Court has discretion to review non-compliant briefs *ex gratia* where the argument is readily understandable. Moreland v. Div. of Employment Sec., 273 S.W.3d 39, 41 (Mo. App. E.D. 2008). Although Employer's first two Points Relied On violate Rule 84.04(d)(2), the standard of review discussed by Employer under the corresponding argument section for these two points on appeal informs us of the legal error Employer alleges - that the Commission's decision is not supported by competent and substantial evidence. Because we prefer to decide issues on their merits, we review Points One and Two *ex gratia*.

However, we decline to consider Employer's Third Point on appeal and dismiss this point for failure to comply with Rule 84.04(d)(2). Point Three generally alleges error in the Commission's failure to specifically determine whether Null discontinued vocational services with good cause. As with the first two points on appeal, Employer does not state the required

6

*legal reason* for any claim of reversible error. But unlike Employer's first two points, the argument section of the brief does not contain a statement of the applicable standard of review as required by Rule 84.04(e). As a consequence of this deficiency, we are unable to determine which of the four statutory grounds Employer asserts as a basis for reversal and would undertake to advocate for Employer were we to suggest which of the four possible grounds, if any, supports Employer's position. Accordingly, Point Three preserves nothing for review and is dismissed.

We now address the merits of Employer's first two points on appeal.

**I.      The Commission's finding that Null's PTD resulted from the May 27, 2004 injury alone is supported by competent and substantial evidence.**

In its first point, Employer challenges the Commission's finding that Null's PTD resulted from the May 27, 2004 injury alone. We presume that Employer reasons the Fund should be responsible for at least a portion of Null's award due to his preexisting injuries and conditions.

Under Section 28l.220, the Fund may be held liable in certain cases where there is a finding of permanent disability when the employee is found to have a preexisting disability. In such cases, the Fund may be held responsible for that portion of permanent disability attributable to the preexisting condition. Section 287.220. To receive benefits from both the employer and the Fund, an employee must have had a prior, permanent disability serious enough to constitute a hindrance or obstacle to employment. See Section 287.220.

In deciding whether the Fund has any liability under Section 287.220, the Commission must first determine the degree of disability stemming from the last injury considered alone. Birdsong, 147 S.W.3d at 138. For this reason, whether an employee suffers from pre-existing disabilities does not become a relevant inquiry until the employer's liability as a result of the last injury is determined. Id. If the last injury, in and of itself, rendered the employee permanently and totally disabled, the Fund incurs no liability to the employee despite the presence of pre-

7

existing disabilities, and the employer is held responsible for the entire amount of compensation awarded by the Commission.  Id.

Here, the Commission adopted the findings of the ALJ, which expressly stated Null's PTD resulted from the last injury alone.  Accordingly, the Commission assessed liability for Null's PTD benefits solely against Employer, and correspondingly denied Null's claim against the Fund.  Employer reasons that the Commission's decision is erroneous, asserting that Null suffered from several pre-accident injuries and psychiatric conditions that combined with his injuries from the lawn mower accident to cause Null's PTD.  Employer further argues that no medical or vocational expert testified that Null's PTD resulted solely from his last injury.  We disagree.

The record before us includes reports and testimony from various health care providers and vocational experts.  We acknowledge that certain portions of the medical evidence support Employer's position, and suggest the Fund should share liability for Null's PTD.  Were we to limit our review to only this evidence, Employer would prevail on this point.  However, the required standard of review precludes such a narrow review and mandates the opposite approach.  Even if we agreed with the Employer's position after reviewing the entire record, we may not disregard the Commission's finding and must affirm the Commission's award if the record contains sufficient competent evidence to support the award.  We review the record in this matter with that precise mandate.

We initially note that Null's primary care physician, Dr. Davis, opined that Null's May 2004 work accident caused him to be permanently and totally disabled.  Specifically, Dr. Davis reported that Null's work-related acute fractures of his L1 and L5 vertebrae "have left him with severe pain rendering him unable to perform even minimal load-bearing tasks.  Because the pain

8

associated with his fractures and atrophying of his backbone muscles, he must change positions frequently, approximately every ten to fifteen minutes, to avoid severe stiffness and chronic pain." Dr. Davis then concluded: "My assessment is that Mr. Null is permanently and completely 100% disabled as the result of direct trauma to his spine and from his recovery from that accident."

Next, Dr. David Volarich ("Dr. Volarich"), Null's medical expert, explained that the injuries Null suffered as a result of the accident severely limited his ability to perform physical work. Dr. Volarich evaluated Null on two separate occasions. Based upon the medical history provided by Null, his physical examination, and Null's medical records, Dr. Volarich diagnosed Null with a compression fracture of the lumbar spine at L-1 and aggravation of degenerative disc disease and degenerative joint disease causing intractable back pain with occasional lower extremity radicular symptoms. Dr. Volarich concluded that the lawn mower accident was the substantial contributing factor as well as the prevailing or primary factor causing these injuries. Dr. Volarich reported that Null was able to work, but only with various limitations, including the recommendation that Null avoid remaining in a fixed position for more than 20 to 30 minutes at a time and that he frequently change positions to maximize comfort including sitting, standing, and resting in a recumbent fashion. Regarding Null's PTD status, Dr. Volarich opined:

> If vocational assessment is unable to identify a job for which he is suited, then it is my opinion that he is ***permanently and totally disabled as a result of the work related injuries of 5/27/04 standing alone.*** I note that he had some preexisting disability in his low back as well as in his left hand, but he was able to work full, unrestricted duty prior to the 5/27/04 accident, which causes him the majority of his current difficulties. (Emphasis added).

Finally, vocational expert Stephen Dolan ("Mr. Dolan") explained the connection between Null's physical limitations and his ability to maintain employment in the open labor market. Mr. Dolan acknowledged Null's limited intellectual capacities and noted that because of

9

these limitations "he's reduced to jobs that are basically physical in nature." However, because Null has a very poorly controlled pain problem which makes him unable to tolerate protracted activity, Mr. Dolan concluded that Null is unemployable in the open labor market. When asked by counsel for the Fund whether Null's unemployability was caused by the May 2004 work accident alone, Mr. Dolan responded that if Dr. Volarich's restrictions are due to the work accident, then based on the work accident alone Null is unemployable in the open labor market.

We acknowledge Employer's disagreement with the testimony and opinions offered by Dr. Davis, Dr. Volarich and Mr. Dolan. However, we are not persuaded to ignore this evidence or to disturb the Commission's findings regarding such evidence. The testimony and reports provided by Dr. Davis, Dr. Volarich, and Mr. Dolan constitute substantial and competent evidence that supports the Commission's finding that Null's PTD is based on the May 2004 work accident alone. We further acknowledge that the voluminous record also contains testimony suggesting that Null's preexisting back conditions, hearing problems, and psychiatric conditions contributed to Null's PTD status; however, we again defer to the Commission's findings as to weight and credibility of testimony. ABB Power T & D Co. v. Kempker, 236 S.W.3d 43, 49 (Mo. App. E.D. 2007). The Commission was free to accept the opinions of Dr. Davis, Dr. Volarich, and Mr. Dolan, and to reject any conflicting opinions given by other experts in the case. See Maas v. Treasurer of State of Missouri, 964 S.W.2d 541, 545 (Mo. App. E.D. 1998) ("The Commission is free to disregard testimony of a witness even if no contradictory or impeaching evidence is introduced."). While Employer can reference evidence to challenge the Commission's award, the voluminous collection of medical records contains evidence supporting the Commission's finding that the May 2004 accident was the sole cause of Null's PTD.

Accordingly, we are not persuaded that the Commission's award lacks the support of substantial and competent evidence and deny Employer's first point on appeal.

## II.     The Commission's award of future medical treatment benefits is supported by competent and substantial evidence.

In its second point on appeal, Employer challenges the Commission's award of future medical treatment benefits. The Missouri Workers' Compensation Law includes an allowance for future medical treatment for injured workers, "as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." Section 287.140.1. In order to receive future medical benefits, an employee need not present "conclusive evidence" that future medical treatment is needed. Lawson v. Ford Motor Co., 217 S.W.3d 345, 351 (Mo. App. E.D. 2007). Instead, the employee needs only to show a reasonable probability that the future treatment is necessary because of his work-related injury. Id. The employee is not required to present evidence of the specific medical care that will be needed, but must establish through competent medical evidence that the care requested flows from the accident. ABB Power T & D Co., 236 S.W.3d at 52-53 (internal quotations omitted).

The Commission found that Null established a need for continuing medical care and therefore specifically awarded Null future benefits "for ongoing medical care to cure and relieve the effects of [Null's] injury of May 27, 2004, which includes injuries to his back, right ear, and psychiatric condition, as well as their sequelae." However, in its Point Relied On, Employer challenges "the award of open medical for the right ear, for post-traumatic stress disorder, and for narcotic drug pain management." In light of the inconsistency between the Commission's actual award and Employer's characterization of the award, we note that this Court is limited to reviewing the Commission's actual award to determine if it is supported by competent and substantial evidence. Accordingly, we determine only whether the award for future medical

11

treatment for Null's back, right ear, and psychiatric condition is supported by competent and substantial evidence. We hold that it is.

Null presented competent medical evidence showing his need for future pain management as a result of his work-related back injury. As the Commission correctly noted, the records of Dr. Davis show that he continues to treat Null for pain problems that are directly related to the May 2004 work accident, including medication and periodic follow-up appointments. Additionally, Dr. Volarich testified that as a result of the work accident, Null will need future pain management which would include the use of oxycodone, a narcotic medication, and cyclobenzaprine, a muscle relaxer. Dr. Volarich testified that Null will require those medications indefinitely.

Null also met his burden of establishing a need for future medical treatment for the injury to his right ear. The records of Dr. Benecke indicate that Null underwent surgery on July 8, 2005, for repair of damage to his right ear that was caused by trauma from the work accident. Dr. Benecke later acknowledged that Null had preexisting hearing loss rated at 22%, but since the work accident his hearing loss is rated at 32%. A claimant need only demonstrate a "reasonable probability" that future medical treatment is necessary by reason of his work-related injury. "'Probable' in this context means founded on reason and experience which inclines the mind to believe but leaves room for doubt." ABB Power T & D Co., 236 S.W.3d at 52 (internal quotations omitted). Based upon Dr. Benecke's opinion that Null suffers from ongoing hearing loss, the Commission could reasonably conclude that future medical care will be needed to cure and relieve the effects of the injury to Null's right ear.

Finally, Null presented competent medical evidence establishing that he is in need of psychiatric care attributable to the May 2004 work accident. Dr. Stillings testified that Null is

12

"in dire need of psychiatric treatment" including psychotropic medication and supportive psychotherapy. Dr. Stillings further specified that Null "will need at least one anxiolytic medication and two antidepressants on an open-ended basis most probably for the remainder of his life." As to the cause of his need for treatment, Dr. Stillings stated that eighty percent of the need for treatment is related to the work injury and twenty percent is related to preexisting conditions. The fact that treatment might benefit a psychiatric condition that existed prior to the May 2004 work accident is immaterial, as Dr. Stillings's testimony establishes that future psychiatric care is necessary as a result of the work accident. See Bowers v. Hiland Dairy Co., 132 S.W.3d 260, 270 (Mo. App. S.D. 2004) (holding that an employer may be required to provide future medical care where there is evidence that the need for treatment is caused by the work injury even if the treatment will also benefit a non-compensable condition).

The award of future medical benefits is supported by competent and substantial evidence. Accordingly, Employer's second point is denied.

## Conclusion

The Commission's determination that Employer alone is liable for Null's permanent and total disability is supported by competent and substantial evidence. The award for future medical treatment for Null's back, right ear, and psychiatric condition is also supported by competent and substantial evidence. Accordingly, the decision of the Commission is affirmed.

Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless J., Concurs

13