**MARYVILLE R-II SCHOOL DISTRICT, Appellant,**

v.

**Daniel PAYTON and Treasurer of the State of Missouri—Custodian of the 2ND Injury Fund, Respondents.**

**WD 80070**

Missouri Court of Appeals, Western District.

Opinion filed: April 11, 2017

---

5. We deny all motions taken with the case.

Clinton D. Collier, for Appellant.

John E. McKay, Kansas City, for Respondent Daniel Payton.

Maureen T. Shine, for Respondent 2nd Injury Fund.

Before Division Three: Karen King Mitchell, Presiding Judge, Victor C. Howard, Judge and Gary D. Witt, Judge

VICTOR C. HOWARD, JUDGE

The Maryville R-II School District (School District) appeals the judgment of the Labor and Industrial Relations Commission (Commission). It complains on appeal that the Commission's decision is against the weight of the evidence. It also says the Second Injury Fund (the Fund) is responsible for some portion of the compensation.

The judgment is affirmed.

## Facts

Daniel Payton is a 58 year old high school graduate with training and certification in heating, ventilation, and air conditioning mechanical work (HVAC). He was hired by the School District on April 21, 2004. In 2014, he held the title of Assistant Supervisor of Building and Grounds. The work required the ability to lift 50 pounds or more.

This case involves a history of injuries. Payton had arthroscopic surgery on his left knee on March 23, 2009 and on his right knee on December 6, 2010. Payton received Synvisc injections in his left knee in 2011. He had rotator cuff surgery on his right shoulder on November 7, 2011. Following each of these procedures, Payton returned to his regular, full duty work with no restrictions.

On January 30, 2014, Payton was evaluated by Effie Martinez, a nurse practitioner. At that visit, Payton reported left shoulder pain, especially in the evenings. The pain was a 0 to 1 on a 0 to 10 pain scale. The pain was described as "aching and throbbing." A left shoulder x-ray was negative for fracture, dislocation, or acute bony abnormality. He was diagnosed with chronic left shoulder pain. Payton continued working.

On March 4, 2014, Payton experienced left shoulder pain of 0 to 1 after lifting a 20-25 pound plastic tote of Christmas ornaments. He scheduled another appointment with Ms. Martinez for March 13, 2014. He continued working his full duty job.

On March 10, 2014, Payton was assisting a coworker with the assembly of a soccer goal. He estimated the goal weighed at least 200 pounds. As he lifted the goal upright near the top of his head, he felt and heard a loud pop in his left shoulder and experienced sudden, severe pain as if

a knife had been shoved into his left shoulder.

Payton reported the injury that day, and the School District sent him to the St. Francis Hospital Emergency Room for treatment. The Report of Injury indicates the Initial Treatment was an "Emergency Case." At the hospital, Payton recounted the incident with the soccer goal and described his pain as "cramping and aching." His pain was documented as a 5 out of 10 severity. His physical examination was negative for numbness, muscle weakness, loss of sensation, or tingling. X-rays were negative for an acute fracture or dislocation. The impression was mild osteoarthritis. Payton was prescribed pain medication, placed in a sling, and advised to follow up with Dr. Thomas DiStefano.

Payton saw Dr. DiStefano on March 11, 2014. Dr. DiStefano is a board certified orthopaedic surgeon. Payton reported to him the accident with the soccer goal. He also reported the prior incident where he bent over to pick up a tote and felt a "pop" in his left shoulder with mild pain. During his examination by Dr. DiStefano, Payton denied numbness or tingling. He rated his pain as a 7 or 8 on a scale of 0 to 10 with use. Based on the medical history and physical exam, Dr. DiStefano stated: "I do not feel like the incident as described by the patient on March 10, 2014 is the prevailing cause of his current condition." Dr. Stefano later reiterated this opinion in a report dated June 1, 2015. Based on this opinion, the School District denied coverage for the treatment under worker's compensation.

Payton then sought treatment on his own from Dr. Thomas Atteberry. Because he saw Dr. Atteberry on March 12, 2014, he did not keep the March 13, 2014 appointment with Ms. Martinez. On April 8, 2014, he underwent an MRI which revealed a full rotator cuff tear in the left shoulder. Dr. Atteberry surgically repaired the torn rotator cuff on May 12, 2014.

Payton's symptoms persisted and he underwent a second MRI on September 3, 2014. That MRI revealed a recurrent full thickness tear of the left rotator cuff. On September 17, 2014, Dr. Atteberry advised that surgical repair would be difficult given the severe retraction on the MRI. Payton chose not to pursue further surgery.

Dr. Atteberry released Payton from treatment with a five pound lifting restriction which the School District could not accommodate. Payton's employment was terminated on September 25, 2014. He has not been employed in the open labor market since.

Payton filed a Claim for Compensation with the Missouri Department of Labor and Industrial Relations Division of Workers' Compensation. The case proceeded to a hearing before an Administrative Law Judge (ALJ). A significant amount of evidence was presented at the hearing.[1]

Payton was evaluated by Dr. P. Brent Koprivica, who is board certified in Occupational Medicine. He is a Fellow in the American Academy of Disability Evaluating Physicians and is a certified Independent Medical Examiner by the American Board of Independent Medical Examiners. Dr. Koprivica found the March 10, 2014 soccer goal accident to be the prevailing factor in Payton's left shoulder injury and resulting disability. He opined that there was no preexisting disability of the left shoulder before March 10, 2014. Dr. Koprivica found Payton to be permanently and

---

1. The evidence in this case was preserved in six volumes of transcripts and exhibits, numbering over 1100 pages.

totally disabled due to the compensable March 10, 2014 left shoulder injury. He concluded the following work restrictions were necessary: no use of the left upper extremity vocationally except with arm adducted to his side on a very limited basis as a support only; no lifting at all with the left arm; and the need to recline and take naps during the day on an unpredictable but frequent basis. Dr. Koprivica found that the need to lie down because of left shoulder pain resulted from the March 10, 2014 injury. He determined that Payton is not medically reliably able to work 8 hours per day, 5 days per week, and 52 weeks per year at any substantial gainful employment. Dr. Koprivica opined that he would consider the permanent total disability to arise based on the restrictions necessitated by the March 10, 2014 work injury. He stated, "I believe the left shoulder alone is totally disabling."

Michael Dreiling, a vocational expert, found that Payton was permanently and totally disabled. He opined that Payton's unemployability was due to the March 10, 2014 accident, given Dr. Koprivica's restrictions. Mr. Dreiling concurred with Dr. Koprivica's opinion that Payton is unemployable because of his need to lie down 3-4 times per day as a result of the March 10, 2014 accident. Mr. Dreiling concluded that the March 10, 2014 accident in isolation rendered Payton totally disabled.

Terry Cordray, the School District's vocational expert, testified that there are a limited number of jobs in the open labor market that Payton is able to perform. But, if Payton is not able to secure one of those jobs, then Payton's unemployability was due to the March 10, 2014 injury in combination with the prior bilateral knee and right shoulder conditions. On cross examination, Mr. Cordray agreed that the restrictions from Dr. Koprivica, which re-sulted from the March 10, 2014 accident, prevented Payton from competing in the open labor market.

Several lay witnesses also testified at trial. These witnesses included Payton's brother and wife as well as two others. The witnesses corroborated Payton's testimony with regard to his behavior and physical abilities before and after March 10, 2014. Specifically, they gave examples of the physical activities Payton engaged in before March 10, 2014 and his inability to continue to do so after March 10, 2014. Both Payton's wife and brother corroborates his need to lie down during the day after the March 10, 2014 accident.

The ALJ found [2] in part that:

I believe [Payton's] testimony that when he got the goal to the top of his head, he heard a loud pop and felt excruciating pain in his left shoulder.

On March 4, 2014, [Payton] lifted a tote at home that weighed between 20 and 25 pounds. His pain was a 0 to 1 on a scale of 0 to 10. He did not go to the Emergency Room at that time. He did not schedule an appointment to see a doctor. He did schedule an appointment to see a nurse on March 14, 2014.

[Payton] worked full time without restrictions prior to ... March 10, 2014. He regularly lifted 50 pounds at work. He went to work on March 5, 2014 and lifted a refrigerator tank at work on March 5, 2014 that weighed between 60 and 70 pounds. He was able to lift that by himself. The lifting of the refrigerator tank did not cause any more shoulder pain. [Payton] worked eight hours on March 5, March 6, and March 7, 2014. March 7 was a Friday. [Payton] did not see a doctor or go to the Emergency Room over the weekend of March

2. We note that the ALJ Award is 80 single spaced pages long.

8 or 9, 2014. An MRI was not done between March 4 and March 10, 2014.

Dr. Koprivica testified the March 10, 2014 incident resulted in a massive rotator cuff tear on the left. . . . Dr. Koprivica did not believe [Payton] would have been able to carry and assemble the soccer goal parts, and lift the assembled soccer goal weighing 200 pounds with a co-worker if he had the preexisting condition.

I find Dr. Koprivica's explanations on his opinions regarding causation are credible and persuasive.

It is Dr. DiStefano's opinion that the March 10, 2014 accident is not the prevailing factor in the cause of [Payton's] current condition and left shoulder injury. I find this opinion not credible or persuasive. Dr. DiStefano did not explain the basis of his opinion. He did not identify the records he reviewed. His opinion is inconsistent with the history of [Payton's] March 10, 2014 injury.

I find the opinions of Dr. Koprivica are more persuasive that the opinions of Dr. DiStefano regarding the cause of [Payton's] left shoulder injury and current condition.

I find and conclude that [Payton's] injury on March 10, 2014 considered alone, in isolation, and in and of itself, rendered Payton permanently and totally disabled.

[Payton] worked full-time without restrictions prior to . . . March 10, 2014. He regularly lifted 50 pounds at work. The competent and substantial evidence does not establish that [Payton] was permanently and totally disabled solely because of preexisting disabilities.

[Payton's] primary pain now is in his left shoulder.

[Payton's] left shoulder pain interrupts his sleep.

[Payton's] left arm causes him to lie down during the day.

[Payton] testified he would still be working if he had not had the March 10, 2014 injury.

I find [Payton's] description of his injury, condition, complaints, and limitations to be credible.

Dr. Koprivica assigned significant restrictions and limitations due to the March 10, 2014 work accident considered alone and in isolation.

I find these restrictions and limitations of Dr. Koprivica due to the March 10, 2014 work accident considered alone and in isolation are credible and persuasive.

Dr. Koprivica concluded [Payton] is totally disabled from all employment and that it would be unrealistic to expect any ordinary employer to employ [Payton] with the restrictions from the March 10, 2014 accident.

I find these opinions of Dr. Koprivica are credible and persuasive.

Michael Dreiling concluded no employer in the ordinary course of business would reasonably be expected to hire Payton due to the March 10, 2014 work accident alone and in isolation.

I find these opinions of Mr. Dreiling are credible and persuasive.

Mr. Cordray testified that Dr. Atteberry's restrictions of five-pounds lifting and no overhead work would severely restrict [Payton's] access to the labor market. I find this opinion credible and persuasive.

I have previously found that Dr. Koprivica's restrictions and limitations are credible and persuasive due to Payton's March 10, 2014 injury alone and in isolation and that Payton needs to lie down unpredictably during the day due to his March 10, 2014 injury alone and in isolation. Mr. Cordray was aware of Dr.

Koprivica's restrictions and limitations due to the March 10, 2014 work accident. Mr. Cordray agrees if we rely on the restrictions of Dr. Koprivica, [Payton] is not able to compete in the open labor market.

I find and conclude that [Payton's] injury on March 10, 2014, considered alone and in isolation, and in and of itself, rendered [Payton] permanently and totally disabled.

The School District appealed to the Commission which affirmed the award and adopted the decision of the ALJ. The School District now appeals to this court.[3]

### Standard of Review

The Missouri constitution, article V, section 18 provides for judicial review of the commission's award to determine whether the award is "supported by competent and substantial evidence upon the whole record." Section 287.495.1 states that a:

court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

"A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Id.* at 223. "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* "There is nothing in the constitution or section 287.495.1 that requires a reviewing court to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Id.*

"An appellate court will defer to the commission on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence." *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013). "The Court reviews an issue of law *de novo.*" *Id.*

"In conducting a review, the court will review the findings of the Commission." *Copeland v. Thurman Stout, Inc.*, 204 S.W.3d 737, 740 (Mo. App. S.D. 2006). "If the Commission incorporates the Administrative Law Judge's opinion and decision, the reviewing court will consider the Commission's decisions as including those of the Administrative Law Judge." *Id.*

### Point I—Prevailing Factor in Causing Payton's Left Shoulder Injury

In its first point on appeal, the School District claims the Commission

---

**3.** There is some suggestion that Payton is not permanently and totally disabled, that he is capable of securing employment, and that he actually does unpaid work for which he could be compensated. The School District does not challenge the determination that Payton is permanently and totally disabled in its points on appeal, though. Thus, facts and arguments pertaining to whether Payton could and should secure employment are not addressed here.

erred in finding that the March 10, 2014, accident was the prevailing factor in causing Payton's resulting left shoulder injury. It says the award is not supported by competent and substantial evidence and is against the overwhelming weight of the evidence because Payton was required to prove his entitlement to compensation, and he failed to do so. Specifically, the School District complains that Payton proffered evidence from a non-orthopaedic expert who lacked surgical experience in the treatment of rotator cuff repairs and that the Commission relied solely on this expert without regard to the School District's expert testimony.

The court in *Jordan v. USF Holland Motor Freight, Inc.*, 383 S.W.3d 93 (Mo. App. S.D. 2012) set forth a four-prong analysis for "against the weight" challenges:

1. Identify a factual proposition needed to sustain the result;

2. Marshal all record evidence supporting that proposition;

3. Marshal contrary evidence of record, subject to the factfinder's credibility determinations, explicit or implicit; and

4. Prove, in light of the whole record, that the step 2 evidence and its reasonable inferences are so non-probative that no reasonable mind could believe the proposition.

*Id.* at 95. The court noted that cases where the Commission's award is against the weight of the evidence are "rare." *Id.* at 93 (quoting *Hampton*, 121 S.W.3d at 223).

Instead of following the *Jordan* analysis, Payton focuses on Dr. Koprivica's credibility. It essentially argues that its expert was more qualified. The School District states in its brief that:

Dr. Koprivica's opinion does not constitute competent and substantial evidence

given his lack of orthopaedic credentials and heavy reliance on subjective factors in formulating his opinion. Dr. Koprivica has never practiced in the field or orthopaedics. He does not perform surgery and typically defers to orthopaedic specialists when surgery is needed. He most certainly does not repair torn rotator cuffs.

"It is a well-settled principle that the Court defers to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony." *Jefferson City Country Club v. Pace*, 500 S.W.3d 305, 315 (Mo. App. W.D. 2016) (internal citation omitted). "Determinations with regard to causation and work-relatedness are questions of fact to be ruled upon by the Commission, and the reviewing court may not substitute its judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission." *Id.* (internal citation omitted). "Where the right to compensation depends upon which of two conflicting medical theories should be accepted, the issue is peculiarly for the Commission's determination." *Id.* (internal quotation omitted). "When the evidence before the Commission would warrant either of two opposed findings, we are bound by the Commission's determination despite supportive evidence for the contrary finding." *Id.* (internal quotation omitted).

As set forth earlier in this opinion, the ALJ made extensive findings of fact, including credibility determinations and explanations for the findings. These findings were supported by competent and substantial evidence and were not against the weight of the evidence. Any argument that the ALJ should have believed the School District's expert over Payton's expert is without merit.[4]

The point is denied.

4. The School District states that since both

physicians testified via deposition that this

### Point II—Whether the March 10, 2014 Accident Resulted in Payton's Disability

In its second point on appeal, the School District claims the Commission erred in finding that the accident of March 10, 2014 resulted in Payton's permanent and total disability is isolation. It says the competent and substantial evidence from Payton, Dr. Koprivica, and Terry Cordray establish that the disability is the result of Payton's prior right shoulder injury combined with the March 10, 2014 left shoulder injury.

■ The Second Injury Fund was created to "encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury." *Hall v. Missouri State Treasurer*, 500 S.W.3d 282, 286 (Mo. App. S.D. 2016) (internal quotation omitted). The Fund "is responsible for the portion of disability attributable to the preexisting condition." *Wickam v. Treasurer of the State of Missouri—Custodian of the Second Injury Fund*, 499 S.W.3d 751, 756 (Mo. App. W.D. 2016). In 2013, the Missouri General Assembly modified the Second Injury Fund statute, section 287.220. Under the modification, the language creating the Fund remained in subsection 1. The original statutory methodology for determining Fund liability was moved to subsection 2. A new methodology for determining Fund liability was set forth in subsection 3. These changes went into effect on January 1, 2014.

In its brief, the School District focuses its attention on section 287.220.3. Both Payton's brief and the Fund's brief also focus on section 287.220.3. Further, the ALJ Award discussed Fund liability based on section 287.220.3. All parties assumed that section 287.220.3 controls whether the Fund should be responsible for a portion of the compensation paid to Payton. After briefs were filed in this case, however, this court addressed the application of section 287.220.3 to a case like Payton's.

■ This court held in *Gattenby v. Treasurer of the State of Missouri-Custodian of the Second Injury Fund*, No. WD 80052, 2017 WL 770959 (Mo. App. W.D. Feb. 28, 2017) that "subsection 287.220.3 applies only where both the preexisting and primary injuries occur after January 1, 2014." Where, as in our case, the preexisting injury occurred before January 1, 2014 and the primary injury occurred after January 1, 2014, subsection 287.220.2 is used to determine Fund liability. Under *Gattenby*, whether the Fund is responsible for a portion of Payton's compensation is determined by the pre-2014 modification methodology as set forth in subsection 2.

Section 287.220.2 states in relevant part:

> All cases of permanent disability where there has been previous disability due to injuries occurring prior to January 1, 2014, shall be compensated as provided in this subsection. ... If the previous disability or disabilities, whether from compensable injury or otherwise, and

court should make its own credibility determinations. The School District cites *Klietthermes v. ABB Power T & D*, 264 S.W.3d 626 (Mo. App. W.D. 2008). We note that in *Klietthermes* the court found that the Commission's view was "not supported by the evidence or by sound logic, and was based on the Commission's unfortunate conclusion that [the expert's] use of 'layman's terminology' to answer a question at the deposition means that

his opinions were 'not scientific.' " *Id.* at 637. This court stated: "We believe the Commission misunderstood the facts and the medical testimony. ... There was no substantial evidence supporting the Commission's decision. We base our conclusion on an objective review of the entire record of the case." *Id.* at 638. In this case, we find nothing to suggest that the Commission misunderstood the facts or medical testimony.

the last injury together result in total and permanent disability, the minimum standards under this subsection for a body as a whole injury or a major extremity injury shall not apply and *the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself*

(emphasis added). Because this language is identical to the language before the 2014 modification, cases discussing the pre-2014 methodology are instructive.

 "In order to decide whether the Fund has any liability, the first determination is the degree of disability from the last injury considered alone." *Birdsong v. Waste Mgmt.*, 147 S.W.3d 132, 138 (Mo. App. S.D. 2004) (internal citation omitted). "For this reason, pre-existing disabilities are irrelevant until the employer's liability for the last injury is determined." *Id.* (internal citation omitted). "If the employee's last injury in and of itself rendered the employee permanently and totally disabled, the Fund has no liability; the employer is responsible for the entire amount of compensation." *Id.*

The School District argued at oral argument that this case needs to be remanded so that the ALJ could engage in the (pre-2014 modification) methodology set forth in section 287.220.2 as required by *Gattenby*. The post-2014 methodology (which the ALJ used in Payton's case) as set forth in section 287.220.3 states in relevant part:

(1) All claims against the second injury fund for injuries occurring after January 1, 2014, and all claims against the second injury fund involving a subsequent compensable injury which is an occupational disease filed after January 1, 2014, shall be compensated as provided in this subsection.

(3) When an employee is entitled to compensation as provided in this subsec-

tion, *the employer at the time of the last work-related injury shall only be liable for the disability resulting from the subsequent work-related injury considered alone and of itself.*

(emphasis added). This is essentially the same language from section 287.220.2 (the pre-2014 modification methodology). Thus, under both the pre-2014 and post-2014 modification methodologies, the Fund is not liable "[i]f the employee's last injury in and of itself rendered the employee permanently and totally disabled." *Birdsong*, 147 S.W.3d at 138.

 The ALJ agreed. He explicitly stated in the award that Fund liability was governed by 287.220.3, which is error under *Gattenby*. But, the ALJ cited case law decided under the pre-2014 methodology (now codified as section 287.220.2) and analyzed Fund liability by first looking at the last injury (the March 10, 2014 accident) alone and in isolation. The ALJ stated:

*What is the Second Injury Fund's liability for permanent total disability benefits?*

I have previously found and concluded that [Payton's] injury on March 10, 2014, considered alone, in isolation, and in and of itself, rendered [Payton] permanently and totally disabled. I have found and concluded [the School District] is responsible for the entire amount of compensation in this case. The Second Injury Fund therefore has no liability in this case.

Under both the pre-2014 and post-2014 methodology, the School District is only responsible for the disability resulting from the March 10, 2014 accident considered alone and in and of itself. The ALJ found several times that Payton was rendered permanently and totally disabled by the injury on March 10, 2014 when that injury is considered alone and in isolation.

Thus, the School District is responsible for the entire award.

The School District argues that the ALJ erred in finding that the March 10, 2014 accident caused Payton's permanent total disability in isolation. Like in the first point, it argues that its witnesses were more credible and should have been believed instead of Payton's witnesses. As in the first point, this argument fails because the ALJ made explicit credibility findings, and we will not disturb those on appeal. *Jefferson City Country Club*, 500 S.W.3d at 315. The ALJ's findings are supported by competent and substantial evidence.

The point is denied.

### Conclusion

The judgment is affirmed.

All concur.